UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Jody Fox** and **Maria Fox**, ) | |
| ) | |
| Plaintiffs, ) | |
| ) Hon. | Robert Holmes Bell |
| v. ) | Chief, U.S. District Judge |
| ) | |
| **Oxford Collection Agency, Inc.**, ) | 1:07 CV0106 |
| a New York corporation, d/b/a ) | |
| **Oxford Management Services**, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**Complaint**

**I.    Introduction**

1.    This is an action for damages, declaratory and injunctive relief, brought against the defendant debt collector in response to defendant's violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

**II.   Jurisdiction**

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiffs' state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

**III.  Parties**

3.    Plaintiff Jody Fox is a natural person residing in Kent County, Michigan. Mr. Fox

1

is the husband of plaintiff Maria Fox. Mr. Fox is a "consumer" as the term is defined and used in the FDCPA. Mr. Fox is a "consumer" and a "debtor" as the terms are defined and used in the MCPA.

4. Plaintiff Maria Fox is a natural person residing in Kent County, Michigan. Mrs. Fox is the wife of plaintiff Jody Fox. Mrs. Fox is a "consumer" as the term is defined and used in the FDCPA. Mrs. Fox is a "consumer" and a "debtor" as the terms are defined and used in the MCPA.

5. Defendant Oxford Collection Agency, Inc. ("Oxford") is a New York corporation, doing business in Michigan under the assumed name of Oxford Management Services. Oxford maintains an office at 135 Maxess Road, Melville, New York 11747. Oxford's registered agent in New York is Salvatore Spinelli, 135 Maxess Road, Melville, New York 11747. Oxford's registered agent in Michigan is The Prentice-Hall Corporation System, Inc., 601 Abbott Road, East Lansing, Michigan 48823. Oxford is a "debt collector" as the phrase is defined and used in the FDCPA. Oxford is a "collection agency" and a "licensee" as these phrases and terms are defined and used in the MCPA.

## IV.    Facts

6. Mrs. Fox had a line of credit with Household Bank or a related entity. Mrs. Fox used the line of credit to purchase goods and/or services for personal, family and/or household purposes. The resulting obligation to pay money was a "debt" as the term is used in the FDCPA and MCPA.

7. Mrs. Fox became unable to pay the debt.

8. Apparently, Household Bank or some other entity hired Oxford to collect the debt

from Mrs. Fox. Alternatively, Oxford purchased the delinquent debt.

9. By letter dated January 9, 2007, Oxford wrote Mrs. Fox and demanded payment of the debt. The letter stated that Oxford had been retained to collect the debt. The letter contained the notice required by 15 U.S.C. § 1692k. The letter invited Mrs. Fox to telephone Oxford's toll free number to discuss the matter. The letter was the initial written communication between Oxford and Mrs. Fox regarding the debt. A copy of the letter is attached hereto as Exhibit A.

10. By a second letter, also dated January 9, 2007, Oxford wrote Mrs. Fox and demanded payment of the debt. The letter stated in pertinent part: "If we do not hear from you within ten (10) days from the date of this letter, we will assume that your response is negative, and our collection efforts against you will be escalated." A copy of the letter is attached hereto as Exhibit B.

11. The rights afforded Mrs. Fox by the FDCPA, 15 U.S.C. § 1692g, to a period of thirty days within which to dispute the debt or to demand other information, as stated in Exhibit A, were overshadowed and contradicted by Oxford's demand that Mrs. Fox contact or pay Oxford within ten days or suffer consequences, as stated in Exhibit B.

12. On or about January 17, 2007, Mrs. Fox telephoned Oxford and spoke with an unidentified female employee. Oxford's employee demanded payment of the debt. Mrs. Fox asked Oxford's employee for information regarding the debt. Mrs. Fox stated that she disputed the amount of the debt as claimed by Oxford. Oxford's employee falsely represented that if Mrs. Fox insisted upon disputing the debt, then the debt would increase by "two or three thousand dollars." Mrs. Fox stated that she would need to investigate the matter and terminated the

conversation.

13. On or about January 18, 2007 at approximately 10:19 a.m., an Oxford employee telephoned Mr. Fox's cellular telephone while Mr. Fox was at his place of employment and demanded payment of the debt. Mr. Fox told Oxford's employee that he was not allowed to take telephone calls from debt collectors at his place of employment. Mr. Fox told Oxford's employee that it was inconvenient for Mr. Fox to receive telephone calls on his cellular telephone from Oxford during business hours.

14. On January 25, 2007, Mrs. Fox faxed a letter to Oxford at 1-631-454-4508, disputing the debt and exercising her right to cause Oxford to cease collection of the debt until Oxford obtained verification of the debt and mailed the verification of the debt to Mrs. Fox. Oxford received the letter on January 25, 2007. A copy of the letter is attached hereto as Exhibit C.

15. Oxford failed to mail verification of the debt to Mrs. Fox.

16. Oxford failed to cease collection of the debt.

17. On or about January 25, 2007 at approximately 10:49 a.m., an Oxford employee telephoned Mr. Fox's cellular telephone while Mr. Fox was at his place of employment.

18. On or about January 25, 2007 at approximately 10:51 a.m., an Oxford employee telephoned Mrs. Fox on her cellular telephone and demanded payment of the debt.

19. On or about January 25, 2007 at approximately 11:05 a.m., an Oxford employee named "Chris" (at extension 190) telephoned Mrs. Fox on her cellular telephone and left a message on Mrs. Fox's voice mail, demanding payment of the debt and falsely accusing Mrs. Fox of having "defrauded my client."

20. On or about January 25, 2007 at approximately 5:00 p.m., an Oxford employee telephoned Mr. Fox's cellular telephone while Mr. Fox was at his place of employment.

21. On or about January 25, 2007 at approximately 5:03 p.m., an Oxford employee telephoned Mr. Fox's cellular telephone while Mr. Fox was at his place of employment.

22. On or about January 26, 2007 at approximately 2:53 p.m., an Oxford employee telephoned Mrs. Fox on her cellular telephone.

23. On or about January 26, 2007 at approximately 4:01 p.m., an Oxford employee telephoned Mrs. Fox on her cellular telephone.

24. On or about January 30, 2007 at approximately 2:32 p.m., an Oxford employee telephoned Mr. Fox's cellular telephone while Mr. Fox was at his place of employment.

25. On or about January 30, 2007 at approximately 2:32 p.m., an Oxford employee telephoned Mrs. Fox on her cellular telephone.

26. On or about January 30, 2007 at approximately 2:33 p.m., an Oxford employee telephoned Mr. Fox's cellular telephone while Mr. Fox was at his place of employment.

27. On or about January 30, 2007 at approximately 2:38 p.m., an Oxford employee telephoned Mrs. Fox on her cellular telephone.

28. On or about January 30, 2007 at approximately 2:40 p.m., an Oxford employee named "Chris" (at extension 190) telephoned Mrs. Fox on her cellular telephone and left a message on Mrs. Fox's voice mail, demanding payment of the debt and falsely stating that "our attorney has given us approval to litigate this claim" and that Mrs. Fox would be sued if she did not return his call within forty-eight hours.

29. On or about January 31, 2007, Mrs. Fox spoke by telephone with an Oxford

employee named "Chris" (at extension 190). In the ensuing conversation, Oxford's employee made the following representations:

  a)  As a preliminary matter, "let me get your claim from our litigation staff."

  b)  The debt "charged off and went on your credit report on December 31, 2006."

  c)  "I don't have to waste my time babysitting you guys on this account."

  d)  "We were retained regarding this legal claim against you."

  e)  Oxford had been instructed to "collect it, one way, or another."

  f)  Oxford had been retained to use all available means to collect the account, including litigation.

  g)  If the debt was not paid, "it's gonna be placed [on your credit report] forever."

  h)  A judgment would be placed against Mrs. Fox.

  i)  In response to Mrs. Fox's repeated statements that she did not want Oxford to contact her anymore, "I'm going to have [the creditor] apply that back interest [going back to 2002] on your bill, see how you like it then! Because you defrauded my client."

  j)  In response to Mrs. Fox's repeated statements that she disputed the debt, "You can't dispute this! It's on your credit report!"

30. Oxford's employee repeatedly shouted at Mrs. Fox and verbally abused her.

31. Oxford's employee repeatedly and falsely represented or implied, through the reference to a "claim" in Oxford's office to "proceed against" Mrs. Fox, that litigation against

6

Mrs. Fox had commenced or was imminent.

32. Oxford's employee falsely represented or implied that Oxford would obtain a judgment against Mrs. Fox.

33. Oxford's employee falsely represented that the debt charged off and went on Mrs. Fox's credit report on December 31, 2006.

34. Oxford's employee repeatedly and falsely represented or implied that Oxford would sue Mrs. Fox to collect the debt.

35. Oxford's employee falsely stated that Oxford's attorney had given approval to litigate against Mrs. Fox.

36. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, states that no consumer reporting agency may make any consumer report containing information regarding "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The running of the seven-year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

37. Oxford's employee misrepresented the length of time for which derogatory information regarding an unpaid debt could remain on Mrs. Fox's consumer report.

38. Oxford's employee falsely stated that two or three thousand dollars would be added to the debt if Mrs. Fox did not make payment arrangements with Oxford.

39. Oxford's employee falsely stated that he would cause the creditor to add interest to the debt going back to 2002 if Mrs. Fox did not make payment arrangements with Oxford.

40. Oxford's employee repeatedly and falsely represented or implied that Mrs. Fox had "defrauded" the creditor and had committed a crime in order to disgrace Mrs. Fox.

41. Oxford's employee falsely stated that Mrs. Fox did not have the right to dispute the debt.

42. Oxford had no intention of filing a lawsuit against Mrs. Fox to collect the debt.

43. Oxford caused plaintiffs' telephones to ring or engaged plaintiffs in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass plaintiffs.

44. The unlawful debt collection methods, acts and practices of Oxford and its employees were willful. The violations of the FDCPA and MCPA by Oxford and its employees were willful.

45. As an actual and proximate result of the acts and omissions of Oxford and its employees, plaintiffs have suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, and suffering for which they should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

46. Plaintiffs incorporate the foregoing paragraphs by reference.

47. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant violated 15 U.S.C. § 1692c(a) by repeatedly communicating with a consumer at a time or place known or which should be known to be inconvenient to the consumer, and by repeatedly communicating with a consumer at the

consumer's place of employment when defendant knew or had reason to know that the consumer's employer prohibited the consumer from receiving such communication;

b) Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiffs in connection with the collection of a debt;

c) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

d) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt; and

e) Defendant violated 15 U.S.C. § 1692g by sending plaintiffs a letter which overshadowed or contradicted plaintiffs' validation rights, and by continuing to contact plaintiffs in efforts to collect the debt without first providing plaintiffs with verification of the debt in response to plaintiffs' written dispute and demand for verification of the debt.

**Wherefore,** plaintiffs seek judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

d) A declaration that defendant's practices violate the FDCPA; and

e) Such further relief as the court deems just and proper.

## Count 2– Michigan Collection Practices Act

48. Plaintiffs incorporate the foregoing paragraphs by reference.

49. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

   a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt.

   b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment;

   c) Defendant violated M.C.L. § 339.915(n) by causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at times or places which are known to be inconvenient to the debtor; and

   d) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiffs seek judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

    Plaintiffs demand trial by jury.

Dated: February 1, 2007

                                                  */s/ Phillip C. Rogers*
                                                  Phillip C. Rogers (P34356)
                                                  Attorney for Plaintiffs
                                                  40 Pearl Street, N.W., Suite 336
                                                  Grand Rapids, Michigan 49503
                                                  (616) 776-1176
                                                  ConsumerLawyer@aol.com